HOUSTON & T. C. R. CO. v. RAVANELLI.

(Supreme Court of Texas. Jan. 18, 1911.)

MASTER AND SERVANT (§ 243*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—VIOLATION OF RULE.

Evidence that a railroad rule required a blue flag or a blue light at each end of a train or car under or about which were workmen; that an employé was injured by the movement of a line of cars under one of which he was working; that he had failed to display the required signals; that he was daily given a blank form on which he wrote his name and made out a report, on which forms were printed an instruction that if his duties required him to go around, under, or on cars in any track, to protect himself with blue signals; and that he had attended the schools till he advanced into the grade in which he used the third reader, and continued until he had read a portion of that book, though he testified that he did not know of the rule and could not read, and did not know the purpose of the blue signals except that when he had a car jacked up they were used to prevent any car or locomotive from being run against it to prevent knocking the car down—showed him guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 759–775; Dec. Dig. § 243.*]

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Richard Ravanelli against the Houston & Texas Central Railroad Company. From a judgment of the Court of Civil Appeals (123 S. W. 208), affirming a judgment for plaintiff, defendant brings error. Reversed and rendered.

Gregory, Batts & Brooks, J. H. Hart, and Baker, Botts, Parker & Garwood, for plaintiff in error. Jas. H. Robertson, for defendant in error.

BROWN, C. J. Ravanelli was on the 3d day of October, 1907, in the employ of the railroad company as car repairer in its yards in the city of Austin, and while engaged in that work on the above date was injured by a car being moved when he was at work upon it, or just as he had completed his work and was getting out from under it, by the negligence of those who were operating an engine which was propelled with considerable force against the line of cars, under one of which Ravanelli had been at work. As he was getting out from underneath, or between, the car, he was knocked down by the force of the car being propelled against him, and one of his legs was so crushed as to make amputation necessary. The evidence is sufficient to establish the fact of negligence on the part of those who were operating the locomotive and we will not detail the facts testified to by the witnesses which establish that negligence, but will proceed to examine the case upon the assumption that the employés so charged with negligence failed to take any of the precautions prescribed by the rules and regulations of the company for the protection of persons engaged as Ravanelli was. The company is responsible for his injuries unless Ravanelli was guilty of such contributory negligence as to defeat his claim for compensation for his injuries.

The evidence shows that Ravanelli had been in the employ of the railroad company for two years as a car cleaner, and was engaged in and about the yards and depot of the company in Austin during that time. About two months before his injury he had been employed as a car inspector and repairer, and did work in said yards and upon a track known as the "house track," which was located at or near to the depot building where cars were loaded and unloaded. Ravanelli's duty was to inspect the cars that came in on this track, and when he found one out of repair it was his duty to repair it. On this occasion he had discovered that a car, which was in the line of cars above described, had a broken bolt which required that he should remove the bolt and put in a new one, and in doing so it was necessary that he should go underneath the car, after having put the bolt in from above, in order to put the tap on and properly secure it. He had been engaged in this work, and had just completed it and was leaving the place where he had been at work under the car, and was standing between the cars just ready to step out from between them when he was knocked down and his leg injured as before stated.

To establish the negligence of Ravanelli the railroad company introduced the following rules and regulations made for the government of its employés while engaged in such work:

"Rule 26. A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it. When thus protected it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals without first notifying the workmen."

"Signal Rules, No. 7. Employés whose duties may require them to give signals must provide themselves with the proper appli-

ances, keep them in good order and ready for immediate use."

"No. 8. Flags of the prescribed color must be used by day, and lamps of the prescribed color by night."

The company also introduced 48 daily reports made by Ravanelli while engaged in his work as car repairer, upon each of them one of the rules was printed and is in the following form:

"Form 2356—C. S.      Date. Aug. 28, 1907.
    "Name: R. Ravanelli.
    "Examine personally scaffolding, tackle and all other appliances before trusting them.
    "If your duties require you to go around, under or on cars in any track, protect yourself with blue signals."

The defendant in error testified that he was born in Bexar county, in the country, had attended the free schools until he advanced into the grade in which he used the third reader, and continued until he had read a portion of that book, and afterwards he ceased to attend school. Ravanelli is an Italian, and testified that he could not understand English very well, and that he could not write English very well; that he did not read the rule printed on the reports that he made, and that he could not understand it when read to him. He said that no one had ever instructed him as to the danger connected with the service he was engaged in as car repairer, nor had any one ever told him of the necessity of using the blue flag, or blue light, and that he did not know the danger which attended the service without using the signals. He said that he had never seen any one use a blue flag, or a blue light, on the house track; he had seen them used on other tracks, but did not know the purpose for which they were used; that he had used the blue flag himself, but did not know for what purpose it was being used, except that he used it only when he had a car jacked up, and his object was to prevent any car or locomotive from being run against it; that he did not have in view the protection of himself, but to prevent knocking the car down; that he wrote his name himself in each of the 48 reports, just above the rule printed upon each report card, and he wrote the report set out on each card just below the rule, but repeated at each time that he had never read the rule, and did not know its contents. The above is the most favorable statement that can be properly deduced from his evidence and other evidence favorable to him.

The question for our determination is, Does the evidence in its most favorable light to Ravanelli show that, as a matter of law, he was guilty of such contributory negligence which caused or contributed to his injury as to justify this court in disturbing the verdict of the jury and the judgment of the Court of Civil Appeals. "Hence we hold

that, while it was proper for the court to submit to the jury the question of the plaintiff's knowledge of the rule, we do not believe that the testimony will support a finding that the plaintiff did not know of the existence and contents of the rule, and that compliance with it might have protected him from injury." The following extract from Thompson on Negligence states accurately and succinctly the rule of law applicable to the facts of this case: "If a servant violates known rules devised and promulgated by the master to promote his safety, and is injured in consequence of such violation, he cannot make his own fault the ground of recovering damages from his master, but must take the consequences of his disobedience, his folly, or his recklessness." G. H. & S. A. Ry. Co. v. Brown, 95 Tex. 2, 63 S. W. 305; S. A. & A. P. Ry. Co. v. Wallace, 76 Tex. 636, 13 S. W. 565; Shanny v. Androscoggin Mills, 66 Me. 429.

The Court of Civil Appeals found as a fact that Ravanelli did know of and did understand the rule prescribed by the company for his protection, and we are of opinion that the evidence would not support a different conclusion. Ravanelli testified, in substance, that he used the flag to protect a car from being knocked down when it was jacked up, and he was at work under or about it. It would be extending credulity beyond reason to say that a man who knew that the flag would protect a car "jacked up" from being knocked down would not know that it would likewise protect him from injury if he were in danger by the movement of the car whether "jacked up" or not. That which would knock the car off the jack would be likely to injure him if he were in a position to be run over or crushed in case the car should be moved violently. He knew that the blue flag, which was prescribed by the rule, was to protect the car on which it might be displayed from the impact of other cars or locomotives that might be operated upon the same track, and that knowledge was sufficient. If the flag would protect the car from such shock, it would protect him from danger of injury while engaged in his work.

Ravanelli was employed to perform the work in which he was engaged when injured in that yard and upon that track which was dangerous on account of the liability of other cars running against the one under which he was at work through the negligence of other employés. The testimony shows that on each card he received on each and every morning that he went to work the rule was printed and attention directed to it specifically. His name was written by himself on the card directly in contact with the printed rule which was addressed to whomsoever the card should be given in this language: "If your duties require you to go around, under or on cars in any track, protect yourself with blue signals." It seems incredible that any man would fail to understand that this rule was

definitely applicable to any place at which he might be at work and that it was plainly applicable to himself. Ravanelli's evidence shows that he understood distinctly that the use of the blue signals was to prevent any other car or locomotive from being run against that on which he might be engaged, and, whether he knew that it was for his protection or not, if he had obeyed the rule he would have received the protection, or if it had been violated he would have been entitled to compensation for his injuries.

This action is not based upon failure of the railroad company to instruct Ravanelli in the dangers of his work and the manner of performing it. Indeed, his own evidence shows that such warning was unnecessary, for he was 23 years old, and had worked in the railroad yards for two years as a car cleaner. He could read English, it was true, not very well, but evidently he could read and understand English. He spoke English sufficiently well to make himself understood without an interpreter, and understood what was transpiring under a thorough and exhaustive cross-examination. The company employed him to perform labor in which he was liable to receive injury from the negligence of others, and it had a right to rely upon his intelligence, being sufficient to comprehend the rule which was printed in plain terms. It would seem from the evidence ·that the company regarded this as a danger-ous work, and did not rely upon verbal instruction to him, but, on every morning when he went to work, delivered to him a card on which the warning was printed and his attention called to it by a hand printed on the card with the index finger pointing to the rule. It was addressed to the person to whom it was delivered personally warning such person of the danger that lay before him in his day's work. For 48 days, at least, he received this warning and performed his duties which he intelligently noted upon each card and returned it to the office. Such a man did not need to be warned of the danger in any other way than that which the company adopted, and, in fact, it would seem that this was an unusual precaution taken by the company to protect employés from any danger attendant upon their hazardous employment.

The railroad company could not have one of its officers at every point where a car was being repaired to arrest the movement of other cars or locomotives which might endanger its employés, but adopted the most effective method in Rule No. 26 thereby placing in the hands of the employé himself an imperative injunction which he could serve upon all others by simply displaying the signal upon the car upon which·he was at work. In the°most positive terms the blue signal forbade all employés who were moving other cars to come in contact with any car where the blue signal was seen. The company having placed in Ravanelli's hands and under his absolute control the most effective protection it could give to him and he having failed to use it to guard against injury, we are of opinion that he was, as a matter of law, guilty of negligence, and, although those persons in charge of the car or locomotive which caused the injury were guilty of negligence, Ravanelli cannot recover.

It is ordered that the judgments of the district court and Court of Civil Appeals be reversed, and that judgment be here entered for the plaintiff in error.

RAMSEY, J., not having heard the argument, took no part in the decision of this case.