TOWNSHIP OF GROSSE POINTE *v.* DETROIT & LAKE ST. CLAIR RAILWAY.

1. STREET RAILWAYS—LICENSE FROM TOWNSHIP—MANDAMUS.
    The conditions in the agreement or franchise a street railway obtains from a township by virtue of 2 Comp. Laws, § 6446, are as binding upon the company as if imposed by the statute, and *mandamus* is the proper remedy to compel compliance therewith.

2. SAME—SALE—OBLIGATIONS OF GRANTEE.
    A company which purchases a street-railway property takes the road subject to all the obligations resting upon its grantor. 2 Comp. Laws, § 6448.

3. SAME—OBLIGATIONS OF GRANTOR.

  A street-railway company which has sold all its property to another railway company cannot be compelled to comply with the conditions of its franchise.

*Certiorari* to Wayne; Donovan, J. Submitted December 12, 1901. (Docket No. 178.) Decided April 22, 1902.

*Mandamus* by the township of Grosse Pointe against the Detroit & Lake St. Clair Railway, impleaded with the Rapid Railway Company and the Detroit, Lake Shore & Mt. Clemens Railway, to compel a compliance with the conditions of a franchise granted the last-mentioned road. From an order granting the writ, respondent brings *certiorari*. Affirmed.

  *James H. Pound*, for relator.

  *Gray & Gray* and *L. S. Trowbridge, Jr.*, for respondent.

  MONTGOMERY, J. This is *certiorari* to review a peremptory writ of *mandamus* issued by the circuit court on petition of the township of Grosse Pointe, requiring the Detroit, Lake Shore & Mt. Clemens Railway and the Detroit & Lake St. Clair Railway, two Michigan corporations, to comply with certain conditions of a franchise granted by the relator to the Detroit, Lake Shore & Mt. Clemens Railway, its successors and assigns, and accepted by said railway. By virtue of 2 Comp. Laws, § 6448, the Detroit & Lake St. Clair Railway had purchased the railroad, franchise rights, and other property of the Detroit, Lake Shore & Mt. Clemens Railway, and was operating said railroad. The writ commands both respondents to maintain certain electric lights during the hours of darkness, while actually engaged in running cars, and to run a car over said line daily, except Sundays, at such an hour that passengers thereon may make convenient connection at the terminus of said railway, in Grosse Pointe Farms,

with a car on the Citizens' line, reaching Woodward avenue, in Detroit, at 7 o'clock a. m., local time.   The Detroit & Lake St. Clair Railway contends that the writ of *mandamus* should not have issued against it—*First*, upon the ground that the franchise or license of a town board is a mere contract, and "does not rise to the dignity of a statute," and therefore that the duty to perform the acts required by the writ is not a duty imposed by law, but a mere contractual obligation; and, *second*, upon the ground that it is not shown to have accepted the conditions of the franchise.

In *City of Lansing* v. *Lansing City Electric Ry. Co.*, 109 Mich., at page 127 (66 N. W., at page 951), it was held that *mandamus* is the proper remedy to compel a street-railway company to comply with a city ordinance requiring it to pave between its tracks.   It is sought to distinguish that case from the present on the ground that the ordinance in that case had the force of law, while it is contended that in the present case the agreement between the township authorities and the railway company is a mere contract, which will not be enforced by *mandamus*. We see no reason for this distinction.   The statute (2 Comp. Laws, § 6446) provides, as to cities and villages:

"Any street-railway corporation organized under the provisions of this act may, with the consent of the corporate authorities of any city or village, given in and by an ordinance or ordinances duly enacted for that purpose, and under such rules, regulations, and conditions as in and by such ordinance or ordinances shall be prescribed, construct, use, maintain, and own a street railway for the transportation of passengers in and upon the lines of such streets and ways in said city or village as shall be designated and granted from time to time for that purpose in the ordinance or ordinances granting such consent; but no such railway company shall construct any railway in the streets of any city or village until the company shall have accepted in writing the terms and conditions upon which they are permitted to use said streets."

As to townships, the provision is as follows:

"Any company organized under the provisions of this act may construct, use, maintain, and own a street railway for the transportation of passengers in and along the streets and highways of any township, upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement, and the acceptance by the company of the terms thereof shall be recorded by the township clerk in the records of the township."

In effect, these two provisions are not dissimilar. In either case the company derives its authority to occupy the street or highway from the statute. The only limitation is that it first obtain the consent of the local authorities; and in either case, when the consent is obtained, the conditions are as binding as though imposed in the statute.

As to the contention that the purchasing company is not liable to be proceeded against in the same manner as its grantor was, we think it unsound. The only rights derived are by purchase, it is true, but it seems clear that such a purchasing company takes the road subject to all the obligations resting upon its grantor. See 2 Comp. Laws, § 6448.

The writ of *mandamus* was properly directed to the Detroit & Lake St. Clair Railway. As to the Detroit, Lake Shore & Mt. Clemens Railway, we think the situation is different. This company sold out to its co-respondent, and is not in position to comply with the requirements of the writ. The order as to this company is reversed, and, as to the Detroit & Lake St. Clair Railway, affirmed. No costs will be awarded to either party.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.